UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| STEVEN ARTHUR BORDEAUX, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner, )<br>Social Security Administration )<br>)<br>Defendant. ) | No. 3:13-CV-455<br>(VARLAN/GUYTON) |

# REPORT AND RECOMMENDATION

This case is before the Court pursuant to 28 U.S.C. § 626(b), Rule 72(b) of the Federal Rules of Civil Procedure and the Rules of this Court for a report and recommendation regarding disposition by the District Court of the Plaintiff's Motion for Summary Judgment and Brief in Support [Docs. 18 and 19] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 20 and 21]. Plaintiff Steven A. Bordeaux seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

The Plaintiff filed an application for a period of disability and disability insurance benefits and an application for supplemental security income on November 2, 2009 alleging disability beginning April 15, 2007. His application was denied initially and upon reconsideration. The Plaintiff then requested a hearing, which was held before ALJ Robert L. Erwin on September 12, 2011 and February 13, 2012. The Plaintiff was present and testified. The ALJ issued an unfavorable decision on March 6, 2012, finding that the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. The Appeals Council

1

denied Plaintiff's request for review of that decision; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

I.   **ALJ FINDINGS**

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.
>
> 2. The claimant has not engaged in any substantial gainful activity since April 15, 2007, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*..).
>
> 3. The claimant has the following severe impairments: neck and back pain; adjustment disorder; and substance abuse disorder in the past (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift/carry 10 pounds frequently and 20 pounds occasionally; stand/walk/sit for six hours each during an 8-hour workday with normal breaks. The claimant is limited to no more than occasional climbing; stooping; bending; crouching; crawling; kneeling; and squatting. He must avoid more than frequent reaching overhead with either hand. He has no more than mild mental limitations as reflected by the psychological evaluation. The claimant's global assessment functioning (GAF) is 80 (an indication of only slight mental impairment in social and occupational functioning).
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 6, 1969 and was 37 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from April 15, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 16-23].

## II. DISABILITY ELIGIBILITY

This case involves an application for disability insurance benefits as well as SSI benefits. An individual qualifies for disability insurance benefits if he or she: (1) is insured for disability insurance benefits; (2) has not attained retirement age; (3) has filed an application for disability insurance benefits; and (4) is under a disability. 42 U.S.C. § 423(a)(1). To qualify for SSI benefits, an individual must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

3

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall only be determined to be under a disability if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529.

The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

**III.    STANDARD OF REVIEW**

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g).

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless. See Wilson, 378 F.3d at 546-47.

5

Case 3:13-cv-00455-TAV-HBG   Document 23   Filed 07/10/14   Page 5 of 15   PageID #: 576

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. POSITIONS OF THE PARTIES

The Plaintiff disagrees with the ALJ's decision because he alleges that it was not based on substantial evidence. [Doc. 19 at 9]. Specifically, the Plaintiff argues that the ALJ erred in giving no weight to the opinions of the treating physicians, Dr. Cindy Perry, M.D. and Dr. Andrew Miller, Ph.D. Id. First, the Plaintiff contends that the treating physicians' opinions should have been given controlling weight because the ALJ fails to contend that the physicians' opinions were not supported by acceptable clinical and laboratory diagnostic techniques and also "does not clearly state what, if any, substantial evidence is inconsistent with the treating physician's [sic] opinions." Id. at 11. Although the Plaintiff argues that it is not clearly stated, he contends that the ALJ implies that he treated the non-treating physicians' opinions as substantial, inconsistent evidence. Id. The Plaintiff argues that this is improper because the opinion of a consulting physician cannot be used as substantial evidence to contradict a treating physician's opinion. Id. at 12. The Plaintiff also states that the ALJ implies that the Plaintiff's daily living activities are inconsistent with the treating physicians' opinions; considering these activities as substantial evidence is improper, according to the Plaintiff, because "the ALJ does not contend, and the record does not suggest that the Plaintiff could do any of these activities on a *sustained basis*," which the regulations require when assessing the functional limitations of mental impairments. Id. (emphasis in the original).

Second, the Plaintiff argues that even if the ALJ properly concluded that the treating physicians' opinions were not entitled to controlling weight, the assignment of no weight was improper. Id. at 17. The Plaintiff asserts that the ALJ did not follow the correct procedure in determining what weight to assign the physicians as he failed to consider the requisite factors provided in the regulations; the Plaintiff contends that if the ALJ had considered those factors, he should have assigned the opinions "great weight as opposed to total rejection." Id. at 18. The Plaintiff argues that the ALJ's reason for not giving any weight to the treating physicians was that the claimant failed to follow prescribed treatment, and that this was improper because "there exists no regulation or policy that allows for a full rejection of a treating source opinion for failure of the claimant to follow prescribed treatment." Id. at 15-16. The Plaintiff also contends that the ALJ's other reason for rejecting the treating physicians' opinions—that they have given their opinions out of sympathy to the Plaintiff—was not a good reason because the ALJ was required to recontact the physicians to obtain clarification of this ambiguity and failed to do so. Id. at 16-17.

The Plaintiff also asserts that the ALJ's errors were not harmless: While the vocational expert determined that a person with mild mental limitations, as the consultative physician's opinion on which the ALJ relied found the Plaintiff to be, could obtain numerous jobs, the vocational expert opined that an individual with marked limitations in psychological functioning, which is a finding that the treating physicians' opinions reflect, would be unable to maintain competitive employment. Id. at 22. Consequently, the Plaintiff argues that the decision to give the consultative physician's opinion great weight in favor of that of the treating physicians was not harmless. Id.

7

The Commissioner responds that the ALJ properly considered the relevant medical evidence in assessing the Plaintiff's RFC, including the opinions of Dr. Perry and Dr. Miller. [Doc. 21 a 4]. In support of this contention, the Commissioner states that opinions on some issues, "such as whether the claimant is disabled, whether a claimant meets a Listing, the claimant's RFC, and the application of vocational factors," are administrative findings and as such are not entitled to controlling weight. Id. at 5.

The Commissioner further argues that, even if the ALJ failed to give sufficient reasons for rejecting the treating physicians' opinions, doing so was harmless error. Id. at 6. In support of this argument, the Commissioner cites a number of examples from the record of the Plaintiff's activities, as well as the medical opinions of both the treating and consultative physicians, which she alleges support the ALJ's finding that the Plaintiff had no more than mild mental limitations. Id. at 6-11. The Commissioner also contends that the Plaintiff's sole reliance on the treating physicians' assigned GAF score of 50 is insufficient to prove that he is unable to work, as "absent evidence the examiner assigned a GAF score based on his or her opinion regarding the patient's ability to work, a GAF score is not entitled to any weight." Id. at 11. Further, the Commissioner asserts that the ALJ properly rejected the GAF scores because they are inconsistent with the record—the consultative physicians found that the Plaintiff's mental limitations were slight to none, and the plaintiff's daily activities support the finding that the Plaintiff has no more than mild mental limitations. Id. at 12.

## V. ANALYSIS

The Plaintiff first argues that the ALJ's decision not to give controlling weight to the opinions of the treating physicians, Dr. Perry and Dr. Miller, was not supported by substantial

8

evidence. [Doc. 19 at 9]. Specifically, the Plaintiff contends that the ALJ failed to provide good reasons as to why the treating physicians were not given controlling weight: The ALJ did not allege that the treating physicians' opinions were not supported by acceptable clinical and laboratory diagnostic techniques and "does not clearly state what, if any, substantial evidence is inconsistent with the treating physicians' opinions." [Id. at 11].

The Plaintiff received mental health treatment from Cherokee Health Systems from March 2010 to September 2010. [Tr. 437-48]. Dr. Miller evaluated the Plaintiff on March 29, 2010, and the Plaintiff reported that he was anxious, felt useless, sad, lonely, and like a failure, and that he had trouble sleeping. [Tr. 445]. Dr. Miller found that he had sleep problems, his attitude was cooperative, his motor activity fidgety, his speech excessive, his mood anxious, his affect appropriate, his thought process circumstantial, and his thought content normal. [Tr. 445]. Dr. Miller diagnosed the Plaintiff with a mood disorder, unspecified, and assessed a GAF score of 50, indicating serious symptoms. [Tr. 444-45].

Dr. Perry evaluated the Plaintiff on March 30, 2010; the Plaintiff reported sad and hopeless feelings, as well as sleep problems and decreased focus. [Tr. 443]. Dr. Perry opined that the Plaintiff was alert and oriented, his thoughts were logical but circumstantial, he was talkative, may have narcissistic qualities, he was appropriately groomed and dressed, his mood was good with a full range of affect, and he denied paranoia and suicidal or homicidal thoughts. [Tr. 443]. Dr. Perry diagnosed the Plaintiff with a mood disorder, unspecified, assessed a GAF score of 50, and prescribed Paxil. [Tr. 443].

The Plaintiff returned to Dr. Miller on April 5, 2010 and reported stress. [Tr. 442]. Dr. Miller found his appearance normal, attitude cooperative, motor activity fidgety, speech rapid

9

and excessive, mood anxious, affect appropriate, thought processes circumstantial, thought content normal, and no suicidal or homicidal thoughts. [Tr. 442].

Dr. Perry saw the Plaintiff for a medication check on April 27, 2010. [Tr. 441]. The Plaintiff reported that the Paxil had helped somewhat, but that he was still under a great deal of stress. [Tr. 411]. Dr. Perry found that the Plaintiff was alert and oriented, his thoughts logical and goal-directed, his mood depressed, his affect restricted, and that he had no hallucinations or paranoia and had no suicidal or homicidal thoughts. [Tr. 441]. Dr. Perry increased the Plaintiff's Paxil dose, diagnosed him with a mood disorder, unspecified, and assessed a GAF score of 50. [Tr. 441]. Dr. Miller also saw the Plaintiff that day and found that the Plaintiff was "clearly under a great deal of stress . . . ." [Tr. 440]. His findings were consistent with those made in the Plaintiff's prior visit. [Tr. 440, 442].

The Plaintiff returned for treatment on September 22, 2010, and reported that he was doing fairly well, though he had been without his medication for "awhile." [Tr. 439]. He indicated that he did very well on Paxil and wanted to restart it. [Tr. 439]. Dr. Perry's findings were consistent with those of the Plaintiff's last visit; she restarted the Paxil prescription, diagnosed the Plaintiff with a mood disorder, unspecified, and assessed a GAF score of 50. [Tr. 439]. The Plaintiff's chart was closed in February 2011 when he did not return for additional treatment. [Tr. 437-38].

Consultative examiner Dr. Roy Nevils, M.D., saw the Plaintiff on March 30, 2010. [Tr. 365]. Dr. Nevils found that the Plaintiff gave adequate attention to his appearance and personal hygiene; that he was overtly calm and pleasant in manner but a rather intense individual; that he was cooperative, spontaneous, coherent, and without evidence of disorientation or thought disorder; and that his insight was adequate, he was aware of the purpose of the evaluation, and

10

was considered a credible informant. [Tr. 367]. Dr. Nevils found an adjustment disorder with mixed emotional features, a nicotine addiction, and marital problems. [Tr. 368]. He assigned a GAF score of 80 [Id.], indicating only transient and expectable reactions to psychosocial stressors causing no more than slight impairments in social and occupation functioning. Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34, 4th ed. (revised) 2000.

A second consultative examination was performed by Dr. Phillip Axtell, M.D., on October 6, 2011. [Tr. 449]. Dr. Axtell found that the Plaintiff was oriented, alert, had a normal rate and volume of speech, his responses were coherent and easy to understand, and his thought processes were clear and logical. [Tr. 451]. Dr. Axtell also found that the Plaintiff showed no evidence of short-term or long-term memory impairment, but did show evidence of a mild impairment in his ability to sustain concentration. [Tr. 452]. He also found that the Plaintiff's mood was happy and his affect was mood congruent. [Tr. 452]. Dr. Axtell did state that the Plaintiff "showed some evidence to suggest he could be malingering. He was inconsistent and vague in parts of his own history. He may be over stating his difficulties." [Tr. 452]. Dr. Axtell found a mood disorder, not otherwise specified, and stated that he was unable to determine the Plaintiff's GAF due to possible malingering. [Tr. 453].

In the disability determination, the ALJ found that "[t]he claimant's mental capacity for mild limitations is compatible with the medical source statement of the State Agency psychologist who noted no severe mental limitations and Dr. Nevils who determined his GAF to be 80 . . . ." [Tr. 18]. The ALJ noted that Dr. Miller and Dr. Perry determined the Plaintiff's GAF to be 50, but found "great weight" in Dr. Nevil's opinion, "given the fact that Dr. Axtell concludes the claimant is malingering and gives inconsistent reports considering his medical

11

history." [Tr. 18]. The ALJ gave no weight to the opinions of Dr. Perry and Dr. Miller because the claimant was noncompliant with the treatment the doctors recommended—the claimant related that he had not taken Paxil as prescribed, though he maintained that it significantly improved his mental status, and the physicians closed the Plaintiff's file in February 2011 due to noncompliance with scheduled appointments and prescribed medications. [Tr. 18].

The ALJ further commented that "[t]reating physicians may express an opinion in an effort to assist a patient with whom they sympathize," or may provide a supportive note to an insistent patient to "avoid unnecessary doctor-patient tension." [Id.]. The ALJ notes the impossibility of proving such motives, but states that "it is more likely that such motives exist where the assessment departs substantially from the rest of the record, as in the current case." Id. The ALJ then noted that the claimant reported a plan to Dr. Perry to move to South Carolina and open a machine shop, an assertion that lent "credibility to the fact that the claimant is not disabled and is able to perform normal daily work activities on a sustained basis." [Tr. 19].

Under the Social Security Act and its implementing regulations, if a treating physician's opinion as to the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record, it must be given controlling weight. 20 C.F.R. § 404.1527(c)(2).

Should an ALJ decline to give controlling weight to the treating physicians' opinions, he was required to balance the following factors to determine what weight the opinion was due: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must always give "good reasons" for whatever weight is given to that source's opinion. 20 C.F.R. § 404.1527(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." SSR. 96-2p, 1996 WL 374188 at *5 (July 2, 1996). Nonetheless, the ultimate decision of disability rests with the ALJ. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).

The Court observes that the ALJ does provide some reasons for discounting the treating physicians' opinions. Specfically, the ALJ relies on the opinions of the consultative examiners as inconsistent evidence. In addition, the ALJ cites the Plaintiff's noncompliance with recommended treatment and an intent to open a machine stop in South Carolina as inconsistent evidence. [Tr. 18-19]. While these considerations are relevant to the determination of what weight to grant the treating physicians' opinion, the Court finds that they are not sufficiently "good reasons" to decline to grant them any weight at all. The ALJ never indicates that he considered the length of the treatment relationship, the frequency of examination, the extent of the treatment or relationship, or whether the treating physicians are specialized in any way. The Court thus finds that the ALJ failed to properly apply the treating physician rule in this case. See Renfro v. Comm'r of Social Sec., No. 2:12—CV—8, 2013 WL 392471, at *12 (E.D. Tenn. Jan. 10, 2013) (recommending remand where the ALJ stated only that he found the treating physician's opinion to be inconsistent with the medical evidence of record and that the plaintiff had a history of malingering).

The Sixth Circuit "has made clear that '[it] do[es] not hesitate to remand when the Commissioner has not provided good reasons for the weight given to a treating physician's opinion and [the Sixth Circuit] will continue remanding when [it] encounters opinions from ALJs that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." Cole, 661 F.3d at 939 (quoting Hensley v. Astrue, 573 F.3d 267 (6th Cir. 2009) (citation and internal quotation marks omitted)).

The Court will not remand the case if the violation is a harmless error. A violation can be deemed harmless error if:

> "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation."

Friend v. Comm'r of Social Sec., 375 F. App'x 543, 551 (6th Cir. Apr. 28, 2010) (citation omitted).

The Court does not find that any of these exceptions apply in this case. Upon review of the record, the Court does not find the treating physicians' opinions to be patently deficient, nor that the ALJ adopted the opinions. The Court also finds that the ALJ has not met the goal of § 1527(d)(2), as the ALJ's opinion does not sufficiently explain why he decided to give no weight at all to the plaintiff's treating physicians.

Accordingly, the Court will recommend that the case be remanded to the ALJ for clarification of the weight afforded to the treating physicians' opinions and the reasons for according such weight pursuant to the factors set forth in 20 C.F.R. § 1527(c)(2).

14

## VI. CONCLUSION

Therefore, it is hereby **RECOMMENDED** that Plaintiff's Motion for Summary Judgment [**Doc. 18**] be **GRANTED**, and that the Commissioner's Motion for Summary Judgment [**Doc. 20**] be **DENIED**. The Court recommends that this case be **REMANDED** to the ALJ to explain the weight accorded to Plaintiff's treating physicians and the reasons for such weight pursuant to the factors set forth in 20 C.F.R. § 1527(c).

Respectfully submitted,

_Bruce Guyton_
United States Magistrate Judge